IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ERIC DEMOND RUSSELL                                                                                         PLAINTIFF

v.                                            Civil No. 4:22-cv-04073-SOH-BAB

SHERIFF JACKIE RUNION;
WARDEN JEFFIE WALKER; and
SERGEANT DANIEL GOLDEN                                                                              DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Eric Demond Russell, under 42 U.S.C. § 1983. Plaintiff names as Defendants, Sheriff Jackie Runion, Warden Jeffie Walker, and Sergeant Daniel Golden from Miller County, Arkansas. Before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 21). Plaintiff filed a Response (ECF No. 25). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

## I. BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Department of Corrections – Mississippi County Work Release Center ("ADC") in Luxora, Arkansas. His claims in this action arise from his incarceration in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas in July 2022. At all times relevant to the instant lawsuit, Defendant Runion was the Sheriff of Miller County, Defendant Walker was the warden of the MCDC, and Defendant Golden was a sergeant at MCDC. (ECF No. 1). Plaintiff was a pretrial detainee at the time of the alleged constitutional violations. *Id.* at 2.

Plaintiff filed his Complaint on August 16, 2022. (ECF No. 1). Plaintiff alleges his claims against Defendants in their official capacity only. Plaintiff claims the Defendants interfered with his legal mail violating his constitutional rights. Specifically, Plaintiff argues Defendants: (1) suppressed his First Amendment right to free speech; and (2) denied his Fourteenth Amendment right to due process by interfering with his access to the courts.[1] *Id.* at 4. Plaintiff requests compensatory and punitive damages as well as injunctive relief against Defendants. *Id.* at 9. Specifically, Plaintiff request the monetary damages he would have received in *Russell v. Pilgreen, et al.,* Civil Case No. 4:22-cv-04024-SOH-BAB (W.D. Ark. 2022), which he claims Defendants deprived him of when they failed to deliver his legal mail in a timely manner. (ECF No. 1, p. 9).

In their Motion for Summary Judgment and Brief in support, Defendants assert, even taking all facts as alleged by Plaintiff, he has failed to establish a viable access-to-courts claim. Defendants argue that one instance of mail tampering with no adverse legal consequences fails to establish a violation of the Constitution. (ECF No. 22).

The factual allegations in this matter are largely undisputed save for one—whether Plaintiff's legal mail was delivered already opened on July 6, 2022. Plaintiff claims he received mail from the United States District Court delivered to him on July 6, 2022 in an already opened

---

[1] The Court notes Plaintiff also listed a Sixth Amendment right to assistance of counsel claim in his Complaint. However, he made no factual allegations to support this claim. (ECF No. 1, p. 4). Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court will consider well plead factual allegations in the Complaint as true, and construe all reasonable inferences from the pleadings in favor of the non-moving party. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). However, while the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004). As Plaintiff alleged no facts to support his Sixth Amendment claim, the Court need not consider it here.

envelope. Non-party Officer Walker delivered the mail to Plaintiff and told Plaintiff he found it lying on the floor in the Max C Tower. The mail was dated June 13, 2022. (ECF No. 1, p. 4).

Plaintiff alleges the delay in delivery of his legal mail caused him to miss a June 30, 2022 deadline in *Pilgreen*. *Id*. at 5. Additionally, Plaintiff claims he was also notified by the United States District Court that mail sent to him at the MCDC was being returned to the Court even though he was still incarcerated there. *Id.*

Defendants submitted two affidavits and the mail policy of the MCDC in support of their Motion for Summary Judgment. First, non-party Golden Adams, Captain of the MCDC at the time of Plaintiff's complaints, states: (1) Defendant Golden investigated Plaintiff's claim that someone deliberately opened and interfered with his legal mail; and (2) Defendant Golden determined Plaintiff's claim was unfounded at that time. (ECF No. 21-1, p. 1). However, Defendant Golden's investigation did find:

> . . . during this time period in June of 2022, several inmate's incoming mail was placed in the tower for staff to pass out the mail to the inmates. However, it got overlooked and was there for some time period[,] up to several weeks[,] before it was given to the inmates. [Plaintiff's] legal mail was not opened and was given to him unopened[,] but it was not given to him immediately upon receipt.

(ECF No. 21-1, pp. 1-2).

Captain Adams goes on to state:

> I was made aware of the situation by [Defendant] Golden and took steps to correct it from happening again, specifically that a particular employee assigned to specifically deliver the mail rather than rely upon shift staff to deliver it from the tower during the shift it was delivered to the tower. This alleviate[d] the situation from happening again.
>
> There was no intention behind [Plaintiff] not receiving his legal mail as soon as it was received and it was not specific to him.

(ECF No. 21-1, p. 2).

3

Finally, Captain Adams explained the MCDC policy is to return mail as unclaimed when the inmate does not respond when his name is called after two attempts. *Id.*

Defendant Golden's Affidavit included the same information as Captain Adams' Affidavit. (ECF No. 21-3).

The MCDC Mail Policy submitted in support of Defendants' Motion for Summary Judgment appears to be missing pages. Additionally, there is no section regarding legal mail. The only reference to legal mail in the portion of the mail policy submitted by Defendants is under Section 5 "MAIL PICK-UP." In this section there is a reference to inspected outgoing legal mail for contraband in the presence of the inmate prior to the sealing of the envelope. (ECF No. 21-2, p. 5). However, there is no mention of incoming legal mail policies or procedures in the mail policy submitted by Defendants.

The MCDC mail policy does include an applicable section 6 titled "MAIL DISTRIBUTION" which states:

   a. Mail shall only be delivered to the person to whom it is addressed.
   b. If an inmate does not respond when his/her name is called, the correspondence shall be returned to the Sergeant's Office and delivery attempted once more later. After such time it shall be considered "unclaimed."
   c. Unclaimed mail shall be returned to the sender.

(ECF No. 21-2, p. 5).

Plaintiff responded to Defendants' Motion on April 13, 2023. (ECF No. 25). In his Response, Plaintiff included: (1) his "Statement of Undisputed Facts;" (2) Plaintiff's Affidavit; (3) multiple grievances Plaintiff filed regarding his claims; and (4) the MCDC Policy on "Inmate Rights, Complaints & Grievances SOP 09.01." In Plaintiff's Affidavit attached to his Response, he specifically disputed the fact his legal mail delivered on July 6, 2022 was unopened. (ECF No. 25, p. 8). He also states in his sworn Statements of Undisputed Facts that he requested "corrections

officer Walker's statement" through the discovery process and it was never provided. (ECF No. 25, p.2). According to Plaintiff, corrections officer Walker is the jail employee that delivered his opened legal mail, and his statement would prove the fact the mail was opened prior to delivery.[2] Further, Plaintiff points out there is no incident report to document Defendant Golden's alleged investigation of the incident. (ECF No. 25, p. 2). Plaintiff also explains the deadline he missed in *Pilgreen,* due to the delay in delivery of the legal mail, was the deadline for filing a notice of appeal. (ECF No. 25, p. 1).

Finally, in his Response, Plaintiff argues Defendants mishandling and failing to timely deliver his legal mail was done in bad faith and in violation of his First and Fourteenth Amendment rights. Plaintiff acknowledges the MCDC Mail Policy and Procedure, but he argues the MCDC employees do not follow this written procedure. Plaintiff requests MCDC employees to follow the stated procedures. (ECF No. 25).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

---

[2] Corrections Officer Walker is not the same person as Defendant Warden Jeffie Walker.

5

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under Section 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under

Section 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). To sustain an official capacity claim against such an entity a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).  Thus, Plaintiff's official capacity claims against Defendant are "functionally equivalent" to alleging her employer, Little River County, had "a policy, custom, or [took an] official action" that deprived him of his constitutional rights. *Veatch*, 627 F.3d at 1275; *Johnson*, 452 F.3d at 973.

To establish a claim for "custom" liability, Plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the official of that misconduct; and

3) That Plaintiff was injured by acts pursuant to the government entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, p. (8th Cir. 2013).  "A single deviation from a written, official policy does not prove a conflicting custom."  *Id.* (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990)).

## III. DISCUSSION

Plaintiff claims Defendants interfered with his legal mail while he was incarcerated in the MCDC. Specifically, he asserts Defendants are responsible for holding his mail for approximately one month causing him to miss an appeal deadline, and when this legal mail was finally delivered, it was already opened. (ECF No. 1). Additionally, in his Response to Summary Judgment, Plaintiff claims his mail from the United States District Court was being returned to the Court instead of delivered to him, and he argues that Defendants did not follow their own mail delivery policies. (ECF No. 25).

### A. Delay in delivery of opened legal mail

Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Labr Union*, 433 U.S. 119, 125 (1977). "Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence . . .." *Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001). "Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998).

However, an inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis v. Casey,* 518 U.S. 343, 351-2 (1996); *see also Farver v. Vilches,* 155 F.3d 978, 979-80 (8th Cir. 1998) (*per curiam*); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on

access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the [official] has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted). The Eighth Circuit applies this injury requirement to pretrial detainees as well as convicted inmates. *See Smith v. Boyd,* 945 F.2d 1041, 1043 (8th Cir. 1991).

Here, while Plaintiff claims the delay in the delivery of his legal mail caused him to miss an appeal deadline in *Russell v. Pilgreen, et al.,* Civil No. 4:22-cv-04024 (W.D. Ark. Nov. 3, 2022), a review of the referenced case shows no such prejudice occurred.[3] *Pilgreen* involved a Section 1983 claim asserted by Plaintiff against narcotics officers in Texarkana, Arkansas for an alleged illegal search and seizure. *Id.* On June 13, 2022, the Court issued a Report and Recommendation recommending the case be stayed and administratively terminated, pursuant to the *Younger* doctrine, until Plaintiff's state criminal case could be finalized. *Pilgreen,* ECF No. 14. Plaintiff's objection deadline for the Report and Recommendation was June 30, 2022. *Id.* Plaintiff did not file objections, and Chief Judge Susan O. Hickey adopted the Report and Recommendation staying and administratively terminating the case on July 12, 2022. *Pilgreen*, ECF No. 15. In the adoption Order, Judge Hickey provided Plaintiff thirty (30) days after the final resolution of his state criminal case to file a motion to reopen *Pilgreen*. *Id.* Plaintiff filed a Motion to reopen *Pilgreen*

---

[3] *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records).

on October 12, 2023. *Pilgreen*, ECF No. 17. Judge Hickey denied this Motion because Plaintiff's criminal case was adjudicated and finalized on August 29, 2022—more than thirty (30) days prior to Plaintiff's Motion to reopen. Judge Hickey then dismissed Plaintiff's claims without prejudice. *Id.*

It is undisputed here that Plaintiff received his legal mail from the United States District Court on July 6, 2022—six days after his Report and Recommendation response deadline.[4] However, the docket in *Pilgreen* is also clear that Plaintiff did not suffer prejudice from this delayed delivery. While Plaintiff was unable to meet his objection deadline, there is no evidence to suggest his objection would have changed Judge Hickey's decision to stay and administratively terminate his case. An administrative termination was clearly warranted under the *Younger* doctrine in the *Pilgreen* case.[5] Furthermore, the administrative termination was not a dismissal of Plaintiff's claims, and Plaintiff had another opportunity to pursue the claims had he timely filed a Motion to Reopen the case in September 2022. Plaintiff made no assertion that Defendants caused his belated filing of the Motion to Reopen the *Pilgreen* case. Finally, Plaintiff's claims in *Pilgreen* were dismissed without prejudice on November 2, 2022. Plaintiff could have refiled his *Pilgreen* claims had he wished to do so. Accordingly, based on the summary judgment record and the public record of *Pilgreen*, the Court finds Plaintiff did not suffer prejudice or actual injury by

---

[4] The Court presumes this is the appeal notice deadline Plaintiff references in his Complaint as there were no applicable appeal timelines in June and July 2022 in the *Pilgreen* case.

[5] Federal courts must abstain from hearing a case when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented. *Younger v. Harris*, 401 U.S. 37 (1971). Plaintiff had ongoing state criminal proceedings pending at the time, and Plaintiff had raised the exact constitutional claims in his pending state criminal case. *See State v. Russell*, No. 46CR-20-634-1.

Defendants' delay of delivery or opening of his legal mail dated June 13, 2022. *See Hartsfield,* 511 F.3d at 831.

As Defendants correctly argue, this Court has consistently held that a one-time opening of legal mail which did not prejudice Plaintiff or cause him actual injury, fails to state a cognizable constitutional violation. *See Williams v. Runion,* Civil No. 4:18-cv-04059, 2019 WL 5588750, at *7 (W.D. Ark. Oct. 11, 2019), report and recommendation adopted, Civil No. 4:18-cv-04059, 2019 WL 5580962 (W.D. Ark. Oct. 29, 2019); *Badger v. Loe,* Civil No. 1:18-cv-01038, 2019 WL 3483131, at *12 (W.D. Ark. July 31, 2019); *Solis v. Jones-Foster,* Civil No. 4:19-cv-0425, 2019 WL 3294801, at 2 (W.D. Ark. July 2, 2019), report and recommendation adopted, Civil No. 4:19-cv-04025, 2019 WL 3292353; and *Solomon v. Campbell*, Civil No. 4:18-cv-04001, 2019 WL 937932, at *5 (W.D. Ark. Feb. 26, 2019), appeal dismissed, Civil No. 19-1644, 2019 WL 4655952 (8th Cir. June 4, 2019).

Accordingly, Plaintiff has failed to state a cognizable access-to-courts claim in violation of his constitutional rights based on the delayed delivery of opened legal mail.

### B. Mail returned to the U.S. District Court

Plaintiff also claims his legal mail was returned to the United States District Court rather than delivered to him at the MCDC. There is no evidence on the record or the docket sheet in *Pilgreen* to support Plaintiff's allegation. The Clerk of the U.S. District Court in this district notes on the docket when mail is returned as undeliverable. There are no such notations on the *Pilgreen* docket. The Court will not adopt Plaintiff's allegations of returned mail as fact here because they are blatantly contradicted by the *Pilgreen* docket. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Furthermore, as stated above, Plaintiff has failed to demonstrate any prejudice or actual injury caused by Defendants actions. Accordingly, Plaintiff has failed to state a cognizable claim regarding the return of legal mail to the U.S. District Court.

### C. Mail policy

Plaintiff also argues that Defendants did not follow the MCDC mail delivery policies. It is well settled that prisoners do not have a constitutional right to enforce compliance with internal prison rules or regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having ... prison officials follow prison regulations"); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("there is no [section] 1983 liability for violating prison policy"). Accordingly, Plaintiff fails to state a cognizable claim regarding the failure to follow the mail policy.

### D. Official capacity

As the Court has determined Plaintiff failed to state any cognizable constitutional claims against any of the Defendants, there can be no official capacity claims. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (The Eighth Circuit has consistently recognized without an underlying substantive constitutional violation against a defendant in their individual capacity, a plaintiff cannot be successful on an official capacity claim against that defendant's employer). Accordingly, all of Plaintiff's claims fail as a matter of law and Defendants' Motion for Summary Judgment should be granted.

### IV. CONCLUSION

For the reasons stated above, I recommend Defendants' Motion for Summary Judgment (ECF No. 21) be **GRANTED** and the claims against them be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 30th day of November 2023.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE